## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No.:

ERIK HOLT, an individual,

     Plaintiff,

v.

FLORISSANT FIRE PROTECTION DISTRICT, a Colorado non-profit corporation,

     Defendant.

---

## COMPLAINT AND JURY DEMAND

---

Erik Holt, by and through his attorneys, Leventhal Lewis Kuhn Taylor Swan PC, hereby submits this Complaint and Jury Demand against the Florissant Fire Protection District as follows:

### Parties, Jurisdiction, and Venue

1.     Plaintiff Erik Holt ("Mr. Holt") is an individual domiciled in Florissant, Colorado.

2.     Defendant Florissant Fire Protection District ("FFPD") is a special district operating in Florissant, Colorado.

3.     This Court has federal question jurisdiction under 28 U.S.C. § 1331 because this action is brought, in part, under U.S. Const. amend. I.

4.     This Court has supplemental jurisdiction over the claim asserted under Colorado common law pursuant to 28 U.S.C. § 1367 because it is so related to the claims arising under federal law that they form part of the same case or controversy.

5.     This Court has personal jurisdiction over FFPD because, among other things, this action arises out of events that occurred in the State of Colorado.

6.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because the unlawful
conduct complained of herein arose and occurred in the District of Colorado.

7.      All applicable administrative remedies have been exhausted.

**General Allegations**

8.      Mr. Holt was first employed by the FFPD as interim Fire Chief from April 2022 to
September 28, 2022 and then as the permanent Fire Chief until his termination on June 22, 2023.
Mr. Holt's job performance was exemplary.

9.      FFPD is a special district organized under Colo. Rev. Stat. § 32-1-101 *et seq.* and
is therefore subject to regulation and control of its operations including, but not limited to, elections
for FFPD Board of Directors ("Board") members, the transition of power between Board members,
meeting regulations, and public disclosure requirements.

10.     On May 2, 2023, Florissant held an election for the FFPD Board. There were
incumbent Board members and non-incumbent candidates standing for election.

11.     The election included six non-incumbent candidates including Paul Del Toro, Allen
Schultz, David Groat, Robert Perry, Jim Rank, and Judy Dunn.

12.     The election for the FFPD Board was held at the FFPD Fire Station at 2606 W.
Highway 24, Florissant, Colorado 80816 and by mail-in ballot.

13.     Mr. Del Toro, Mr. Schultz, Mr. Groat, Mr. Rank, Ms. Dunn, and Mr. Perry selected
the following poll watchers: Toni Moore, Laura Robledo, Shawn McNulty, Jordan Moon,
Elizabeth Pendleton, and Mark Kohlman. Prior to the administration of their duties, the poll
watchers took an oath as required by Colo. Rev. Stat. § 1-7-108 and were bound by Colorado
election law and special district law.

2

14.     Several concerned citizens complained to Designated Election Officer Sarah Luetjen and Mr. Holt that candidates and poll watchers were undermining the integrity of the election by violating election laws including by intimidating and harassing voters outside of the fire station.

15.     These citizen complaints prompted Mr. Holt to review the security footage from election day. Mr. Holt discovered evidence of numerous election crimes. Among other crimes, Mr. Del Toro, Mr. Schultz, Mr. Groat, Mr. Perry, and Ms. Dunn breached the 100-foot "no electioneering" perimeter while voting was ongoing and engaged in behavior prohibited by Colorado election law. Specifically, they were seen greeting voters and escorting them to the premises.

16.     Poll watchers Ms. Moore, Mr. Moon, Ms. Robledo, Mr. Kohlman, and Mr. McNulty violated 8 C.C.R. 1505-1, Rule 8 by attempting to determine how people had voted, disclosing confidential voter information they observed, and disclosing or attempting to disclose the results of the election while polls were open.

17.     Poll watchers Ms. Moore, Mr. Moon, Mr. Kohlman, and Mr. McNulty violated 8 C.C.R. 1505-1, Rule 8 by touching or handling official ballots and other election materials, by interfering with the counting of ballots, by interacting with election judges, by using mobile telephones to make and receive calls while in a polling location, and by using electronic devices to record visual and audio information in a polling location while the election was being conducted.

18.     The election results purportedly show that five of the non-incumbent candidates won the majority of the vote, thereby resulting in a complete overhaul of the FFPD Board. The

3

candidates elected on the May 2, 2023 election were Mr. Del Toro, Mr. Schultz, Mr. Groat, Ms. Dunn, and Mr. Perry (collectively "directors-elect").

19.     Starla Thompson was the incumbent Board President during the 2023 FFPD Board election. On May 15, 2023, Ms. Thompson filed a civil complaint against the newly elected Board and several poll watchers in the Fourth Judicial District Court alleging that their actions undermined the integrity of the election.

20.     Around the same time, another individual contacted the relevant District Attorney's office with the same information.

21.     Mr. Holt was mentioned in Ms. Thompson's civil case, but no allegations of illegal conduct were made against him.

22.     Pursuant to Ms. Thompson's report of illegal electioneering to the District Attorney's office, Mr. Holt was contacted by a law enforcement officer who requested that Mr. Holt provide the footage of the election recorded on the FFPD's closed circuit security system. In response, Mr. Holt met with the criminal investigator on May 19, 2023 to provide oral testimony and 48 hours of security recordings.

23.     On June 6, 2023, a criminal investigator met with Amanda Sutton, the outgoing Secretary of the Board, to review the 48 hours of footage provided by Mr. Holt.

24.     Pursuant to the FFPD bylaws and state law, the following steps had to be taken for the directors-elect to act on behalf of FFPD: (1) the election results must have been certified; (2) the directors-elect must have taken their oath of office; and (3) bonds had to be fulfilled and filed. Also pursuant to FFPD bylaws and state law, this transition of power could not take place until the next Board meeting.

25.     The next Board meeting was scheduled for May 24, 2023 but was postponed until mid-June. The directors-elect officially took office on June 10, 2023. In the interim, the directors-elect were not permitted to act on behalf of the Board or FFPD per state law.

26.     Ms. Sutton and Ms. Thompson explained this to the incoming Board members numerous times during May 2023. Despite being informed of their lack of legal authority to do so, the directors-elect continually attempted to assert power and control over FFPD prior to becoming Board members.

27.     For example, on May 10, 2023, Mr. Holt was asked to complete tasks for the new Board, including providing keys, login credentials, and other sensitive information regarding FFPD's operations and finances that Mr. Holt was obligated to keep confidential from anyone except current Board members and employees. At the time, the directors-elect were not Board members or employees; therefore, Mr. Holt was not permitted to share this information with them.

28.     In an email dated May 14, 2023, Mr. Del Toro described a conversation between himself and Ms. Thompson wherein she explained that the directors-elect were not empowered to take office until the election was certified and the directors-elect were sworn in.

29.     On May 15, 2023, Ms. Thompson informed Mr. Del Toro by email: "It is obvious you all are excited and anxious to take over. However, let me remind you that the election has not yet been certified, oaths administered, and bonds secured. It would be against my oath to allow any such access until such time as you take office. An additional reminder is that email chains consisting of a quorum is against statute… The district's next scheduled meeting is May 24, 2023… should the election be certified, oaths and bonds be completed then the newly elected candidates will take office *at that time*." (Emphasis added.)

5

30.     On the same day, Ms. Sutton emailed Mr. Del Toro stating "There is nothing statutorily that supports your request to transition board responsibilities and information *prior* to newly elected members officially taking term of office at the next regular meeting of the board… As a current board member, it is not lawful for me to share private and protected [FFPD] information with you or anyone else whom is not an official, executive, or employee of [FFPD]." (Emphasis in original.)

31.     As stated above, the Board meeting was rescheduled for mid-June, and the transition of power did not take place until June 10, 2023. The directors-elect were given clear notice of their lack of authority to act on behalf of FFPD, including accessing confidential information. However, that did not deter the directors-elect from continuing to exert unlawful influence.

32.     On May 25, 2023, Mr. Del Toro sent Mr. Holt a long list of to-do items, including immediately disabling the security system that recorded Mr. Del Toro's and the other candidates' election law violations.

33.     On May 26, 2023, Mr. Del Toro again pressured Mr. Holt to complete the illegally assigned tasks.

34.     The pressure from the directors-elect to violate special district laws that govern FFPD operations was so great that Mr. Holt contacted the FFPD's former attorney, Linda Glesne, Esq., seeking clarity on his legal obligations. Mr. Holt was advised not to comply with the directors-elects' illegal requests until they were fully empowered Board members, which would not take place until June 10, 2023.

35.     On June 2, 2023, Mr. Del Toro ordered Mr. Holt to "forward all requests that would

normally be sent to [the administrator] directly to me." In response, Mr. Holt stated, "This does

not appear to be a lawful request. As this has become an issue with other issues that continue to

arise, I am requesting that all communication between myself and any director be only in email

form and all requests for in-person communication have the district[']s legal representation present

in person until matters can be resolved."

36.     In response, Mr. Del Toro chastised Mr. Holt for missing a meeting with Mr. Del

Toro earlier that day and demanded that Mr. Holt turn over FFPD's main laptop computer and all

access codes thereto. He also demanded that Mr. Holt provide "all current working files, check

books, check registers, 2022 complete files, files thus far for 2023, any payroll files by 5 PM [*sic*]

today." All of the information Mr. Del Toro requested was confidential, and therefore Mr. Holt

could not comply with his order without violating the law and FFPD policy.

37.     Again, on June 5, 2023, Mr. Del Toro demanded that Mr. Holt provide the items

listed above and threatened Mr. Holt with "further action" if he did not comply with the unlawful

request.

38.     In addition to requesting improper access to FFPD confidential information before

taking office, the directors-elect also took unlawful actions toward FFPD employees.

39.     For example, on May 30, 2023, Mr. Del Toro met with Mr. Holt at Florissant Fire

Station 1. While on site, Mr. Del Toro inquired about the whereabouts of Patti Angell, FFPD's

Administrative Assistant. Ms. Angell is a part-time employee who reported directly to Mr. Holt.

40.     Mr. Holt informed Mr. Del Toro that Ms. Angell was at a physical therapy

appointment. Mr. Del Toro made a statement that, due to Ms. Angell attending a physical therapy

appointment, her performance was not up to par and that he intended to discuss her job performance with her in the near future.

41.     Mr. Del Toro had no previous experience working with Ms. Angell. His judgment was based solely on her absence and Mr. Holt's explanation. Mr. Holt, as Fire Chief, was solely responsible for the supervision of employees such as Ms. Angell. As her supervisor, Mr. Holt had been satisfied with Ms. Angell's performance during her employment with FFPD.

42.     In the days immediately before this meeting, the directors-elect instructed Mr. Holt to remove most of Ms. Angell's essential job duties without explanation or cause.

43.     When Ms. Angell learned of Mr. Del Toro's comments regarding her performance, she resigned the following day in fear of retaliation. Ms. Angell subsequently filed a complaint of unlawful discrimination with the Equal Employment Opportunity Commission ("EEOC") on the basis of her disability. Ms. Angell also submitted an internal complaint to FFPD. Mr. Holt provided witness testimony to the EEOC describing the May 30, 2023 conversation with Mr. Del Toro about Ms. Angell's performance.

44.     Pursuant to his duties as Fire Chief, Mr. Holt communicated that Ms. Angell complained of harassment, hostile work environment, and discrimination to the directors-elect, who were controlling FFPD operations despite their lack of authority to do so and requested to speak to legal counsel regarding these issues.

45.     The directors-elect refused to allow Mr. Holt to speak to the attorney and demanded he disclose what he intended to discuss with the attorney.

46.     Mr. Holt informed the directors-elect that the underlying facts of the complaint involved a director-elect's conduct toward employees and therefore he could not disclose the

requested information without violating his duty to the department. Despite having a clear understanding of the relevant issues, the directors-elect continued to obstruct Mr. Holt's attempts to respond to the internal grievance and the EEOC charge.

47.     In addition to concerns about the proper handling of confidential information and employee issues, the directors-elect materially impeded the operations of FFPD by unlawfully seizing control of FFPD assets.

48.     On May 24, 2023, Florissant citizen Don Moore sent an email to the directors-elect stating, "One major item that will determine the 'real' FFPD Board is who controls the money, who has the check book, who has the assets… Just a suggestion, I would get control of the assets (i.e. money) as soon as possible."

49.     On May 26, 2023, Mr. Del Toro did exactly as Mr. Moore instructed and froze the FFPD bank accounts. From May 26, 2023 forward, all FFPD transactions had to be approved personally by Mr. Del Toro.

50.     Because the May 24, 2023 Board meeting was rescheduled, the directors-elect did not have the power to represent the FFPD at the time the request was made.

51.     Therefore, Mr. Del Toro's actions requiring personal authorization on all FFPD transactions starting May 26, 2023 was unlawful as he was not, and could not properly be, a signatory on the account.

52.     In light of Mr. Del Toro's unlawful request, the bank froze FFPD's assets.

53.     FFPD's liability insurance package was set to expire on June 1, 2023. To renew insurance coverage, FFPD had to provide a signed Colorado Bodily Injury Uninsured Motorists Coverage Selection/Rejection Form and payment by June 1, 2023.

9

54.     Mr. Holt worked closely with Christie Kersnick, FFPD's insurance account manager, and Mr. Del Toro to complete these tasks in a timely manner. On May 30, 2023, Mr. Del Toro and Mr. Holt met in person to discuss the insurance issue.

55.     Mr. Holt obtained Mr. Del Toro's signature on the required form and left the invoice with Mr. Del Toro who, due to his unlawful behavior, was the only individual who could authorize[1] payments from the FFPD bank accounts. The invoice had a due date of June 1, 2023.

56.     Mr. Holt provided the signed form to Ms. Kersnick on May 30, 2023, *i.e.*, before the expiration of the insurance policy.

57.     Unbeknownst to Mr. Holt, the FFPD bank account from which Mr. Del Toro allegedly submitted payment was frozen due to Mr. Del Toro's illegal conduct. As a result, the insurance company could not process payment.

58.     On June 6, 2023, FFPD received a letter from Ms. Kersnick explaining that because payment was not timely received, FFPD's insurance would expire that day.

59.     Because FFPD did not have insurance coverage, the Board decided to halt providing emergency services to the community until insurance coverage could be restored. It was not feasible to provide emergency services without adequate insurance coverage.

60.     The mission of FFPD is to administer a wide variety of emergency services, including responding to structural and medical emergencies. A service stoppage could greatly impact the health and safety of the public.

---

[1] Mr. Del Toro was "authorized" to do so only to the extent he had improperly identified himself as an account signatory. Because the specified procedure had not yet taken place, Mr. Del Toro was not authorized to act on behalf of the FFPD.

10

61.     On June 6, 2023, Mr. Del Toro remitted payment to the insurance company and insurance coverage was retroactively restored to June 1, 2023. In other words, FFPD had no gap in insurance coverage. Once insurance coverage was restored, FFPD resumed providing services within hours.

62.     On June 6, 2023, Mr. Del Toro sent an email to Ms. Kersnick, the insurance account manager, asking "Did you ever actually speak to anyone in the district or send an email? If so to whom?"

63.     On the same day, Ms. Kersnick responded, saying "I corresponded with Chief Holt multiple times since I first sent the renewal over on 5/9/2023… Chief was very responsive and helpful. He was advising he was working on getting the paperwork I needed signed. Both he and Patti Angell sent the signature forms individually over to me on 5/30 but advised he was having a hard time getting payment because the accounts were frozen."

64.     In a letter addressed to the citizens of Florissant, Mr. Del Toro admitted days after this incident that, "the accountability for this issue lies squarely with the bank in changing this policy without notifying me. Social media has bandied about multiple suppositions for blame but again *this is a banking issue, not Chief Holt's, nor the prior board's*. As to the catalyst to the situation, *my action in freezing the account, right or wrong is something I am fully accountable for* and will personally cover reasonable fees incurred by the district in mitigating this issue with the payees." (Emphasis added.)

65.     In an email to Mr. Perry on June 8, 2023, Mr. Del Toro wrote: "After my meetings yesterday with the bank the crux of the issue is the bank at the corporate level determined that *the agreement that I had with the bank branch was illegal as I was not a signer on the account*… The

check was mailed and would have been received on time had that not occurred so *the chief not answering phones or responding was not the issue at all*. We also had not completed our required process of reading into the minutes the changover [*sic*] which we still need to do. But therefore non-cooperation of Starla and Amanda was not the issue either." (Emphasis added).

66.    On June 10, 2023, the transition of power from the incumbent Board members to the directors-elect officially took place.

67.    On the same day, Mr. Holt went on vacation and was scheduled to return in two weeks' time.

68.    On June 22, 2023, before he had even returned from vacation, the newly elected Board terminated Mr. Holt purportedly for cause. Despite Mr. Del Toro's acknowledgement that the mistakes were entirely his and that Mr. Holt bore no responsibility therefor, Mr. Holt's letter of termination stated: "Your termination was made 'for cause' due to your failure to ensure the timely payment of the District's liability insurance when due. This failure resulted in injury or damage to the financial or ethical welfare of the District due to your negligence, misconduct, inabilities or inattention to your duties and responsibilities; and a demonstrated a failure, in the judgment of the Board of Directors, to perform the standard required of the Fire Chief under the terms of the agreement."

69.    The Board's purported reason for termination is false and pretextual. Rather, the Board terminated Mr. Holt in retaliation for his participation in the criminal investigations of the incoming Board members' violations of election law, for refusing to follow unlawful orders, and for reporting the employment law violations committed by one of the directors-elect.

12

70.     For example, on June 5, 2023, Mr. Schultz (one of the named defendants in Ms. Thompson's civil complaint and a person of interest in the then-pending criminal investigation) submitted a *pro se* "Response" to Ms. Thompson's charges. In his response, Mr. Schultz repeatedly attacks Mr. Holt. Notably, Mr. Schultz listed "Chief Erik Holt" with the email address Erik.Holt@florissantfire.com as a party in the "Certificate of Service" section.

71.     In response to his inclusion in the list of parties, Mr. Holt informed Mr. Schultz that he was not a party to the civil complaint to which Mr. Schultz submitted his Response. Mr. Schultz then threatened that he intended to pursue criminal charges against Mr. Holt.

72.     By including Mr. Holt as a named party in his Response and repeatedly attacking Mr. Holt therein, Mr. Schultz demonstrated that Mr. Holt's participation in the investigations into his and the other Board members' conduct was at least one, and likely the primary, motivating factor in his animosity toward Mr. Holt.

73.     Two weeks later, the Board terminated Mr. Holt, purportedly for failing to maintain insurance coverage for the FFPD. As the Board demonstrated by its own actions prior to June 22, 2023, the Board was well aware that it was they and not Mr. Holt who were to blame for the lapse in insurance coverage. Astoundingly, the Board included communications wherein members of the Board clearly confirmed that Mr. Holt was not at fault *in the very investigation* they used to justify his termination.

74.     Mr. Holt has thus far been unable to obtain replacement employment. The main obstacle to finding replacement employment is that he was purportedly terminated "for cause" from the FFPD.

75.     Mr. Holt was forced to sell his house so that he can live off the equity to support

his family. Mr. Holt is a single father to two young girls. Mr. Holt continues to incur substantial

damages each day he is unemployed.

**First Claim for Relief**
**(Retaliation Under the First Amendment of the U.S. Constitution via 42 U.S.C. § 1983)**

76.     The preceding paragraphs are incorporated as if set forth in full herein.

77.     Mr. Holt is a United States citizen formerly employed by FFPD as Fire Chief.

78.     The FFPD is a special district organized under Colo. Rev. Stat. § 32-1-101 *et seq.*

and is a governmental actor.

79.     Upon being requested to do so, Mr. Holt provided testimony and information to a

criminal investigator regarding the election day conduct of several candidates and poll watchers.

80.     These matters are of great public interest because they likely impacted the outcome

of an election that directly affects public health and welfare.

81.     Mr. Holt's job duties as Fire Chief do not include monitoring elections.

82.     Mr. Holt spoke to the investigator as a private citizen concerning matters of public

concern: specifically, the conduct of the candidates and officials during the May 2, 2023 special

district election.

83.     In disclosing this information, Mr. Holt was not acting pursuant to his duties as Fire

Chief.

84.     Mr. Holt's speech in communicating with the criminal investigator was protected

speech under the First Amendment.

85.     Mere weeks after Mr. Holt engaged in protected speech, FFPD terminated his

employment.

14

86.     FFPD's purported reasons for termination are pretextual and false. FFPD terminated Mr. Holt in retaliation for protected speech in violation of his constitutional rights as described *supra*. Specifically, FFPD terminated Mr. Holt for cooperating with a criminal investigation into the incoming Board members' violations of election law.

87.     FFPD's unlawful conduct in terminating Mr. Holt has caused, and is continuing to cause, severe financial and emotional damage to Mr. Holt for which FFPD is liable.

### Second Claim for Relief
### Reserved – Retaliation Under the Americans with Disabilities Act of 1990
### (*42 U.S.C. § 12101 et. seq.*)

88.     The preceding paragraphs are incorporated as if set forth in full herein.

89.     Contemporaneously with the filing of this Complaint, Mr. Holt is filing a charge of discrimination and retaliation.

90.     Upon the conclusion of the investigation by the EEOC, or upon issuance of a right-to-sue letter by the EEOC, Mr. Holt will seek leave of this Court to add a claim for violations of the anti-discrimination laws identified above.

91.     At all relevant times, FFPD was an employer within the meaning of the Americans with Disabilities Act ("ADA").

92.     A charging party is regarded as disabled for purposes of the ADA if he or she suffers adverse employment action because of an actual or perceived physical or mental impairment. *See Adair v. City of Muskogee*, 823 F.3d 1297, 1305 (10th Cir. 2016). It is not necessary that the charging party actually be impaired but only that his or her employer perceives an impairment and pursues adverse action on that basis. *See id.* at 1305-06.

15

93.     Mr. Del Toro perceived Ms. Angell as disabled. In a meeting with Mr. Holt, Mr. Del Toro judged Ms. Angell's performance as deficient due to her physical impairment after surgery and her attendance at physical therapy.

94.     Ms. Angell was qualified for her position as Administrative Assistant, was able to perform the essential functions of her job, and did not require any unreasonable accommodations.

95.     In late May 2023, the Board exceeded its authority to remove many of Ms. Angell's essential job duties without cause and without consulting with her supervisor Mr. Holt.

96.     Some of Mr. Del Toro's comments during the May 30, 2023 meeting provide direct evidence of discrimination based on disability. Mr. Del Toro accused Ms. Angell of poor performance solely because of her perceived disability.

97.     Ms. Angell suffered adverse employment action which was motivated, at least in part, by her perceived disability. Specifically, Ms. Angell was constructively discharged.

98.     Ms. Angell submitted a complaint with FFPD and filed a complaint of discrimination with the EEOC alleging discrimination on the basis of her disability.

99.     Mr. Holt made a good faith report to the Board that a complaint of discrimination had been made against a Board member and requested to speak to legal counsel about the incident.

100.    The Board obstructed Mr. Holt from consulting legal counsel even after it knew that the thrust of the complaint involved Board member conduct toward an employee.

101.    Weeks later, FFPD terminated Mr. Holt's employment purportedly for cause.

102.    FFPD's reason for termination is pretextual. FFPD terminated Mr. Holt, in part, in retaliation for reporting the discriminatory conduct of a FFPD Board member and for providing witness testimony to the EEOC regarding the same.

103.    FFPD's unlawful conduct in terminating Mr. Holt has caused, and is continuing to

cause, severe financial and emotional damage to Mr. Holt for which FFPD is liable.

**Third Claim for Relief**
**(Common Law Wrongful Termination in Violation of Public Policy)**

104.    The preceding paragraphs are incorporated as if set forth in full herein.

105.    During the course and scope of his employment with the FFPD, Mr. Holt raised

reasonable concerns with the Board regarding its violations of special district law, employment

law, and election law.

106.    Mr. Holt refused the unlawful orders of Mr. Del Toro to provide confidential FFPD

information to individuals who were not authorized to access such information.

107.    The Board knew that Mr. Holt refused to comply with these orders because he had

a good faith basis to believe the orders were unlawful.

108.    The directors-elect received extensive notice of their lack of legal authority to act

on behalf of FFPD during this period and yet continued to issue unlawful orders and take unlawful

actions as described *supra*.

109.    Mr. Holt raised reasonable concerns to the Board about Mr. Del Toro's

discriminatory behavior when he revealed the private health information of an employee and

retaliated against her in violation of the Americans with Disabilities Act ("ADA"). *See* 42 U.S.C.

§ 12101 et. seq.

110.    Mr. Holt reasonably believed that Mr. Del Toro's conduct violated the ADA and

his report to the Board was made in good faith.

111.    Mr. Holt provided testimony to the EEOC regarding this incident pursuant to his

duties as Fire Chief.

17

112.    Mr. Holt needed to speak to legal counsel in order to adequately represent FFPD's interests in the employment dispute per his job duties. Mr. Holt spoke to the Board about Ms. Angell's complaint and requested to speak to legal counsel but was obstructed from doing so.

113.    Additionally, Mr. Holt raised reasonable concerns to the Board about violations of election law and special district law, as described above, by each of the new Board members and their hand-picked poll watchers.

114.    As described above, Mr. Holt cooperated with a criminal investigation regarding the unlawful activity of candidates and poll watchers during the special district election.

115.    Mr. Holt's activity in raising these legitimate concerns involved an exercise of statutory, regulatory, and/or rule-based rights related to the public welfare.

116.    Mr. Holt's activities involved the performance of a public duty relating to his basic responsibilities as a citizen and an exercise of important work-related rights and/or privileges.

117.    Reporting issues affecting employee rights, special district law, and election integrity is a clear mandate of public policy for purposes of establishing a claim for wrongful termination in violation of public policy.

118.    Through its employees and Board members, FFPD was actually aware that Mr. Holt had engaged in protected activity. Minimally, FFPD reasonably should have been aware that Mr. Holt had engaged in protected activity.

119.    FFPD retaliated against Mr. Holt days later by terminating his employment for reporting the Board's discrimination against an employee, for cooperating with a criminal investigation into the May 2, 2023 special district election, and for refusing unlawful orders during

the period between the election and the transfer of power on June 10, 2023. *See Martin Marietta*

*Corp. v. Lorenz*, 823 P.2d 100 (Colo. 1992).

120.    FFPD's unlawful conduct in terminating Mr. Holt has caused, and is continuing to

cause, severe financial and emotional damage to Mr. Holt for which FFPD is liable.

121.    Mr. Holt has sent notice of the same pursuant to the Colorado Governmental

Immunity Act.

WHEREFORE, Mr. Holt respectfully prays this Court (1) award damages in an amount to

be proven at trial; (2) award Mr. Holt his attorneys' fees and costs of this action as provided by

applicable law; and (3) award such other relief as the Court deems appropriate. Mr. Holt reserves

the right to amend the operative complaint at an appropriate time to seek punitive damages.

**TRIAL BY JURY IS DEMANDED**

Respectfully submitted this 14th day of July, 2023.

> */s/ Andrew E. Swan*
> Michael D. Kuhn
> Andrew E. Swan
> Keslie R. Cooper
> LEVENTHAL | LEWIS
> KUHN TAYLOR SWAN PC
> 24 South Weber Street, Suite 205
> Colorado Springs, Colorado 80903
> Telephone:  (719) 694-3000
> Email:    mkuhn@ll.law
>        aswan@ll.law
>        kcooper@ll.law
>
> *Attorneys for Plaintiff*

19
